Julie Cavanaugh-Bill, Nevada Bar # 11533
CAVANAUGH-BILL LAW OFFICES, LLC
401 Railroad St., Ste. 307
Elko, Nevada 89801
(775) 753-4357
julie@cblawoffices.org

Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO 81301
(970) 385-6941
matt@kenna.net
*Pro Hac Vice Application To Be Submitted*

Roger Flynn (CO Bar No. 21078),
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org
*Pro Hac Vice Application To Be Submitted*

Attorneys for Applicants in Intervention

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA, *et al.*, ) | Case No. 3:15-cv-00491-MMD-VPC |
| ) | |
| Plaintiffs, ) | |
| ) | **MOTION TO INTERVENE ON** |
| vs. ) | **BEHALF OF DEFENDANTS AND** |
| ) | **MEMORANDUM IN SUPPORT BY** |
| UNITED STATES DEPARTMENT ) | **THE WILDERNESS SOCIETY,** |
| OF THE INTERIOR, *et al.*, ) | **NATIONAL WILDLIFE FEDERATION** |
| ) | **AND EARTHWORKS** |
| Defendants, and ) | |
| THE WILDERNESS SOCIETY, *et* ) | |
| *al.*, ) | |
| ) | |
| Applicants in Intervention/ ) | |
| Defendants ) | |

Three nonprofit conservation organizations, The Wilderness Society, National Wildlife Federation, and Earthworks ("Conservation Groups"), now move for intervention as of right on behalf of the Federal Defendants, pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, they move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Because of the timing of this motion, the Conservation Groups do not seek intervention in order to participate in the briefing or hearing on the Plaintiffs' motion for preliminary injunction scheduled to be heard by the Court on November 17, 2015.

Counsel for the Conservation Groups has contacted counsel for the Plaintiff and the Federal Defendants. The Federal Defendants have stated that they do not oppose this motion as long as the Conservation Groups agree not to file any new claims in the litigation and not to file any motions challenging the scope or content of the administrative record, limitations to which the Conservation Groups hereby agree. The Plaintiffs have stated that they reserve their position until they have reviewed this motion. The Conservation Groups have lodged a proposed Answer with this motion, which should be filed by the Court if it grants this motion.

**INTRODUCTION**

Plaintiffs challenge the September 21, 2015 Record of Decision and Approved Resource Management Plan Amendments for the Great Basin Region, including the Greater Sage-Grouse Sub-Regions of Idaho and Southwestern Montana, Nevada and Northeastern California, Oregon, and Utah, approved by the United States Bureau of Land Management, and the September 16, 2015 Greater Sage-Grouse Record of Decision for Idaho and Southwest Montana, Nevada, and Utah, issued by the United States Forest Service, and seek to enjoin the Nevada portions of those Plans. The Conservation Groups generally support these Plans, as well as the proposed mineral withdrawal, and would be harmed if the Plans were set aside

2

and/or portions of the Plans and proposed withdrawal were enjoined. The wildlife habitat and other environmental protection measures in the challenged Plans and proposed withdrawal represent a needed improvement in public land and wildlife management in the interior West – measures directly in line with the mission of each Conservation Group and affecting lands used and enjoyed by members of the Groups.

For this reason, the Conservation Groups should be permitted to intervene as of right on the side of the Federal Defendants, or alternatively, should be granted permissive intervention.

**ARGUMENT**

### I. The Conservation Groups Should be Granted Intervention as of Right

Rule 24(a)(2) "requires a court, upon timely motion, to permit intervention of right by anyone" who satisfies the rule's four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*) (quotations and citations omitted). "In evaluating whether Rule 24(a)(2)'s requirements are met," the Court should "construe the Rule broadly in favor of proposed intervenors," recognizing that "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* at 1179 (quotations and citations omitted). The Court noted its "consistent approval of intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes." *Wilderness Soc'y*, 630 F.3d at 1179.

Proposed Intervenors meet each part of Rule 24(a)(2)'s four-part test.

3

### A. The Motion to Intervene is Timely

Timeliness is measured by examining "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (quotations omitted). Here, there has been no delay, as this motion has been filed at an early stage of this case. Federal Defendants' answer is not yet due and no administrative record has been submitted to the Court, and no proceedings other than regarding Plaintiffs' motion for preliminary injunction (in which the Conservation Groups do not seek to participate) have occurred. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding an intervention motion timely when filed four months after the complaint and two months after the government's answer). No parties are prejudiced by the timing of this motion. This motion is thus timely.

### B. Each Of The Conservation Groups Have Significantly Protectable Interests In The Subject Of This Action

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) (quotations and citations omitted), *abrogated on other grounds, Wilderness Soc'y*, 630 F.3d at 1177-78, 1180. The requirement of a protectable interest is not a rigid, technical or onerous requirement, in that Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y*, 630 F.3d at 1179. Rather, it is a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quotations and citation omitted). "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation and quotations omitted).

The Conservation Groups have a great interest in the property at issue in this case – the millions of acres of public land subject to the Plans and proposed

4

withdrawal. These interests are exactly the type the courts have long held meet the "interest" test for intervention as of right. As described below and in the attached Declarations from members of the Conservation Groups, a primary reason that the Conservation Groups exist is to protect the United States' public land from the type of development threats that are the focus of the Plans and proposed withdrawal, such as hardock mining (*e.g.,* gold, uranium, molybdenum, copper), oil and gas drilling and development, cattle grazing, and other intensive uses of public land. Members of the Groups make frequent use of the lands covered by the Plans and proposed withdrawal for recreation, wildlife viewing, and scenic enjoyment, and traditional cultural purposes, and have a demonstrated interest and history in seeking to protect the area's natural, recreational, and cultural values. Such "environmental, conservation and wildlife interests" have long been held sufficient for intervention of right. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-28 (9th Cir. 1983).

Further, the Ninth Circuit has repeatedly concluded that a public interest group is entitled to intervene as of right to defend the federal government's compliance with environmental laws. As the Court has stated:

> In *Sagebrush Rebellion, Inc. v. Watt*, for example, we held that several conservation groups could intervene of right to defend the federal government's compliance with the Federal Land Policy and Management Act of 1976 in designating a conservation area for birds of prey. In doing so, we noted that there could "be no serious dispute" concerning the existence of a protectable interest supporting the conservation groups' right to intervene. Similarly, in *Idaho Farm Bureau* … we approved intervention of right by environmental groups as defendants in an action challenging the Fish and Wildlife Service's compliance with the Endangered Species Act ….

*Wilderness Soc'y*, 630 F.3d at 1179-80 (footnote and citations omitted). Similarly, the Ninth Circuit has held conservation groups merit intervention of right where a plaintiff challenges the legality of a measure that the organization had supported. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837-38 (9th Cir. 1996) (public interest groups allowed to intervene as of right when groups "were directly involved

5

in the enactment of the law or in the administrative proceedings out of which the litigation arose").

The Conservation Groups are in exactly the same position as those organizations that the Ninth Circuit has previously held had sufficient interest to intervene.  As explained by the Senior Director for Agency Policy and Planning at the Wilderness Society ("TWS"), Nada Culver, TWS has been extensively involved in commenting on and supporting the wildlife habitat protections contained in the challenged Plans to make sure that they are protective of the sage grouse and to ensure that its members' interests in the sage grouse and the lands they inhabit are protected. Declaration of Nada Culver, Intervenor Exhibit ("Int. Exh.") 1 ¶ 6.  The same is true of National Wildlife Federation (*see* Declaration of Tom France, Int. Exh. 2 ¶¶ 8-12).  Proposed intervenor Earthworks has a special interest in the proposed mineral withdrawal that Plaintiffs challenge, and in seeing that it does not get set aside. Int. Exh. 3 ¶¶ 4-8 (declaration of Thomas Myers).

Applicant TWS has a long-standing interest in the management of Bureau of Land Management ("BLM") and Forest Service lands across the West, including in Nevada, and engages frequently in the decision-making processes for land use planning and project proposals that could potentially affect wilderness-quality lands, wildlife habitat, and other natural resources managed by the BLM and Forest Service.  TWS members and staff enjoy a myriad of recreation opportunities on public lands, including hiking, biking, nature-viewing, photography, hunting, birdwatching and quiet contemplation in the solitude offered by wild places.  Int. Exh. 1 ¶¶ 3-5.

Founded in 1935, TWS's mission is to protect wilderness and undeveloped lands and inspire Americans to care for our wild places. TWS has more than 500,000 members and supporters around the West, including in Nevada. TWS has a

6

1  continuing interest in ensuring the protection of wild lands under the jurisdiction of
2  the BLM and the Forest Service. *Id.*
3        The National Wildlife Federation ("NWF") is the nation's largest member-
4  supported nonprofit conservation advocacy and education organization. NWF has
5  more than four million members, partners, and supporters nationwide, and affiliate
6  organizations in 48 states and territories, including Nevada and Idaho.  NWF is
7  headquartered in Reston, Virginia, with offices throughout the United States,
8  including regional centers in Denver, Colorado and Missoula, Montana. The mission
9  of NWF is to educate, mobilize and advocate to preserve and strengthen protection
10 for wildlife and wild places. Int. Exh. 2 ¶¶ 4-6.
11       For nearly 80 years, NWF has been advocating for the conservation of vital
12 resources upon which wildlife like the greater sage-grouse depend.  As part of its
13 mission to preserve and strengthen protection for wildlife and wild places, NWF has
14 actively worked on behalf of its members to ensure conservation of America's
15 sagebrush steppe. This iconic Western landscape provides habitat for more than 350
16 species, including the greater sage-grouse, pronghorn, mule deer and golden eagles.
17 Many of these species are declining. greater sage-grouse have lost more than half of
18 their native habitat and their numbers have plummeted from an estimated 16
19 million to less than 500,000. Among NWF's activities relating to greater sage-
20 grouse, NWF has worked to secure effective provisions in land use planning
21 documents, mineral leases, drilling and mining permits issued by both federal and
22 state agencies. These provisions include buffers for breeding habitats; limits on
23 surface disturbance in breeding, brooding and wintering habitats and restrictions
24 on structures that provide perches for predators. In addition, NWF has worked with
25 ranchers on both public and private lands to encourage grazing practices that

conserve sage-grouse habitat, including marking fences to prevent grouse losses through collisions. *Id.* ¶ 7.

Earthworks is a nonprofit conservation organization dedicated to protecting communities and the environment from the adverse impacts of mineral and energy development while promoting sustainable solutions. Earthworks fulfills its mission by working with communities and grassroots groups to reform government policies, improve corporate practices, influence investment decisions, and encourage responsible materials sourcing and consumption. Earthworks partners with local affected communities and national and international advocates to respond to and solve the growing threats to the earth's natural resources, clean water, biodiversity, special places, and communities from irresponsible mining, drilling, and digging. Earthworks has its main office in Washington D.C.; as well as offices in Missoula, Montana and Durango, Colorado. Int. Exh. 3 ¶ 3.

Earthworks is the nation's leading conservation organization focusing on hardrock mining issues in the West. Earthworks regularly participates in federal agency permitting and review of proposed hardrock mining operations (i.e., gold, silver copper, molybdenum, uranium, and other minerals subject to location under the 1872 Mining Law). Earthworks has been a plaintiff in numerous federal court cases and administrative appeals challenging BLM and Forest Service approvals of hardrock mining in Nevada, Idaho, Montana, and other western states, as well as national litigation dealing with the federal government's regulation of hardrock mining operations on public land in the West. Through these efforts, Earthworks seeks to protect public environmental resources, including important wildlife habitat for imperiled species such as the Greater Sage Grouse, from the adverse impacts from hardrock mining. *Id.* ¶¶ 4-5.

In sum, each of the Conservation Groups and their members have a deep interest in the public lands at issue, and a strong interest in defending the wildlife and environmental protection measures contained in the Plans and proposed withdrawal which they have long sought.  These interests are sufficient for intervention as of right.

### C. This Lawsuit Threatens the Interests of the Conservation Groups and their Members

Rule 24(a) requires that an applicant for intervention of right be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "Rule 24 refers to impairment 'as a practical matter.'  Thus, the court is not limited to consequences of a strictly legal nature." *Forest Conservation Council*, 66 F.3d at 1498 (quotations and citation omitted); *see also Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (court "may consider any significant legal effect in the applicant's interest").  Rather, "a prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179 (quotations and citation omitted).  The Ninth Circuit applies this test liberally in favor of intervention. *See, e.g.*, *Sagebrush Rebellion*, 713 F.2d at 527-28.

If the Plans and proposed withdrawal are set aside, the wildlife habitat and other environmental protection measures long sought by the Conservation Groups will be eliminated.  Further, as detailed in the attached Declarations, their members' use of the lands at issue, and interests in wildlife and public land protection, would be irreparably harmed. Int. Exh. 1 ¶¶ 7-10; Int. Exh. 2 ¶¶ 13-14; Int. Exh. 3 ¶¶ 10-12.

The Ninth Circuit has long permitted conservation groups to intervene where, as here, the litigation at issue may result in harm to natural and other resource values that are important to the groups' missions and where the groups have worked to protect those values.  *See, e.g.*, *Idaho Farm Bureau Fed'n*, 58 F.3d at 1398 (concluding impairment prong of intervention test was satisfied when plaintiff's claim could impair conservation groups' ability to protect an interest in a threatened species for which they had advocated); *Sagebrush Rebellion*, 713 F.2d at 527-28 (holding that there "can be no serious dispute" regarding, *inter alia*, potential impairment of interest where lawsuit seeks to invalidate conservation area designation, and proposed intervenor conservation group had interests in protecting wildlife and habitat).  Although the Conservation Groups have long advocated for stronger and more comprehensive protections for the Greater Sage Grouse and wildlife habitat than contained in the Plans, at a minimum, the challenged agency actions represent a marked improvement in public land management in the West.

Because the interests of the Conservation Groups and their members are threatened by a lawsuit that seeks to set aside the environmental protection measures for which they have advocated, and which if set aside would cause harm their members' use and enjoyment of the lands they protect, this suit "may impair" their interests.

### D. The Interior Department May Not Adequately Represent The Interests Of The Proposed Intervenors And Their Members.

The fourth prong of Rule 24(a)(2) requires courts to consider "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Forest Conservation Council*, 66 F.3d at 1498-99.  Ultimately, "[t]he requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the

10

burden of making that showing should be treated as *minimal.*"  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also id.* at 538 (Rule 24(a)(2) intervention held warranted where there was "sufficient doubt about the adequacy of representation"); *Sagebrush Rebellion*, 713 F.2d at 528 (burden of showing potentially inadequate representation "is minimal"); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (same).

Here, Federal Defendants will not adequately represent the Conservation Groups' focused interests on environmental protection.  While it is "presumed that [the government] adequately represents its citizens when the applicant shares the same interest," *Prete v. Bradbury*, 438 F.3d 940, 956 (9th Cir. 2009) (citations and quotations omitted), the Conservation Groups and Federal Defendants do not share the same interests.  Rather, "[a federal department or agency] is required to represent a broader view than the more narrow, parochial interests" of the applicant organizations and their members.  *See Forest Conservation Council*, 66 F.3d at 1499.  That is especially true here, where the BLM been directed by Congress to manage its lands, *inter alia*, "in a manner which recognizes the Nation's need for domestic sources of minerals," and for multiple uses including mining, not just for environmental protection.  43 U.S.C. § 1701(a)(12); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 58 (2004) (describing the "enormously complicated" balancing act required by BLM's multiple use mandate).  Forest Service lands are also managed for "multiple uses."  *See* 16 U.S.C. §§ 528-531 (Multiple Use-Sustained Yield Act of 1960).  *See, e.g., Trbovich,* 404 U.S. at 538 (there was "clear[ly] … sufficient doubt about the adequacy of representation" of applicant's interest where the relevant statute "plainly impose[d] on the [government] the duty to serve two distinct interests, which [we]re related, but not identical"); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823-24.

By contrast, the Conservation Groups focus more narrowly on environmental protections.  *See, e.g.*, Int. Exh. 2 ¶ 6 ("The mission of NWF [National Wildlife

11

Federation] is to educate, mobilize and advocate to preserve and strengthen protection for wildlife and wild places. For nearly 80 years, NWF has been advocating for the conservation of vital resources upon which wildlife like the greater sage-grouse depend."). Accordingly, no presumption of adequate representation applies in this case.

Because the Federal Defendants cannot adequately represent the Conservation Group's interests, the fourth and final requirement for intervention as of right is satisfied.

### II. Alternatively, the Conservation Groups Should Be Granted Permissive Intervention Under Rule 24(B)

If the Court determines that the Conservation Groups have not satisfied all of the requirements for intervention as of right, the Court should grant them permissive intervention under Rule 24(b).  Rule 24(b) permits intervention where an applicant's claim or defense, in addition to being timely, possesses questions of law or fact in common with the existing action.  Fed. R. Civ. P. 24(b)(1)(B); *see also Venegas v. Skaggs*, 867 F.2d 527, 529-30 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990). Like intervention of right, permissive intervention is to be granted liberally.  *See* 7C Federal Practice and Procedure § 1904 (3d ed.).

This is a substantially lower burden than the test for intervention as of right under Rule 24(a) since it entirely omits any requirement relating to interests or adequacy of representation.  As shown above, this motion is timely and granting the motion will not prejudice the proceedings or the existing parties.  Moreover, the Conservation Groups intend to respond directly to the Plaintiff's challenges to the lawfulness of the Federal Defendants' actions.  *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002) (applicants "satisfied the literal requirements of Rule 24(b)" where they "asserted defenses … directly responsive to the [plaintiff's] claims"), *abrogated on other grounds*, *Wilderness Soc'y*, 630 F.3d at 1177-78, 1180.  Accordingly, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons, this Court should grant the Conservation Groups motion to intervene as of right.  Alternatively, they should be allowed permissive intervention.

Respectfully submitted,

/s/Julie Cavanaugh-Bill

Attorney for Applicants in Intervention

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing MOTION TO INTERVENE ON BEHALF OF DEFENDANTS AND MEMORANDUM IN SUPPORT BY THE WILDERNESS SOCIETY, NATIONAL WILDLIFE FEDERATION AND EARTHWORKS, along with three exhibits, a proposed Answer, and proposed Order, with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Laura K. Granier
Laura.Granier@dgslaw.com

C. Wayne Howle
whowle@ag.nv.gov

Lawrence VanDyke
lvandyke@ag.nv.gov

Michael Large
mlarge@da.washoecounty.us

Holly A. Vance
Holly.A.Vance@usdoj.gov

Tanya C. Nesbitt

13

tanya.nesbitt2@usdoj.gov

Luther L. Hajek
luke.hajek@usdoj.gov

                                            /s/Julie Cavanaugh-Bill