UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WESTERN EXPLORATION LLC, et al., | Case No. 3:15-cv-00491-MMD-VPC |
| Plaintiffs, | ORDER |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants. | |

**I.      INTRODUCTION**

Plaintiffs initiated this action to challenge two federal agencies' decisions to amend their resource management plans to provide greater protection to the greater sage-grouse species and its habitat. In its Order denying Plaintiffs' Motion for Preliminary Injunction ("PI Order"), the Court reserved ruling on Plaintiffs' claim of irreparable harm caused by the delay in the approval on a right-of-way for a water storage facility in White Pine County. (Dkt. no. 56.) The Court now denies this remaining aspect of Plaintiffs' claim for preliminary injunctive relief.

**II.     BACKGROUND**

The relevant background facts are recited in the PI Order.[1] Plaintiffs' Motion seeks relief from the SFA designation, which, they contend, creates a likelihood of irreparable harm by limiting right-of-ways. Pertinent to this Order are Plaintiffs'

---

[1] Unless otherwise noted, the terms used herein are the same as referenced in the PI Order.

allegations that the Plan Amendments have created onerous administrative processes and have caused uncertainty among local offices tasked with their implementation. To underscore this point, Plaintiffs offer as an example the delay in approval of the Baker Water and Sewer General Improvement District's ("District") application for expansion of an existing right-of-way ("ROW") to replace a leaking water storage tank ("the Project") because of uncertainty over how the Plan Amendments would affect the Project. (Dkt. no. 32-3 at 3-5; *see* Tr. at 39.) Because the issue was not raised in Plaintiffs' Motion, the Court permitted supplemental briefs to be filed. (Dkt. nos. 47, 50, 57, 58.)

The town of Baker and the Project are located within the PHMA. (Dkt. no. 50 at 4.) The District's existing water storage tank and ancillary facilities are located on BLM managed land. (Dkt. no. 50 at 1.) The District has an existing ROW on about 4.48 acres of land for these facilities. (*Id.* at 2.) In the spring of 2015, the District determined that its leaking water storage tank needed to be replaced. (Dkt. no. 32-3.) To minimize disruption in service, the Project would involve expansion of BLM's existing ROW by about 0.069 acres. (*Id.*; dkt no. 50 at 2.) The District submitted an application to renew its ROW in May and a request to amend its ROW to allow for the proposed expansion in July 2015. (Dkt. no. 50 at 2.) On August 31, 2015, at BLM's request, the District combined its applications into a single application ("Application") to facilitate consideration of both requests simultaneously. (*Id.*; dkt. no. 57-2 at 5.) Based on an email from the local BLM office, the District believed that BLM would utilize a shortened NEPA review process — a Categorical Exclusion — to authorize the ROW renewal and expansion, "which can be completed in a matter of weeks."[2] (*Id.*; dkt. no. 50-1, ¶ 8.)

---

[2] Plaintiffs do not offer a copy of the email upon which this belief was based. An email from a BLM staff dated October 14, 2015, after the adoption of the Plan Amendments, states, in pertinent part, that:

> This project has been prioritized to the top of my list . . .
>
> * * *
>
> The processing time for the water tank will take 2 weeks minimum . . . As soon as we have passed the sage grouse and NEPA hurdles, we can send the offer package for you to sign & return.

(fn. cont...)

2

The District's Application identified four phases to the Project: "Phase 1 Planning, Design & Specification--September 2015; Phase 2 Bidding & Award of Contract--October 2015; Phase 3 Start of Construction--April 2016; Phase 4 Completion of Water Project--July 2016." (Dkt. no. 57-2 at 5.)  The construction phase would thus occur over a four month period from April to July 2016. (*Id.*) The declaration from the District's representative attached to Plaintiffs' brief explained that "the District had planned to construct the replacement tank during the 2015-2016 winter so it would be in place and operational in time for the summer 2016."[3] (Dkt. no. 50-1, ¶ 11.) The declaration submitted with Plaintiffs' reply brief clarified that the discrepancy in the timeline of construction between the Application and the first declaration stemmed from a misunderstanding and that the District had planned to begin the preparatory work needed for construction in October 2015. (Dkt. no. 58-3, ¶ 5.) This second declaration further clarified that the new tank would be going through the EPA and NDEP 90 day certification process between June and August 2016 (dkt. no. 58-3, ¶ 5(I)), which appears to mean that the new tank would not be approved for use until after August 2016, assuming all would have proceeded as planned.

On December 10, 2015, during the interim between Plaintiffs' filing of the supplemental brief and Defendants' supplemental response brief, BLM approved the Application under NEPA's Categorical Exclusion review process ("ROW Amendment"). (Dkt. nos. 57, 58, 57-6.) BLM's ROW Amendment contains certain stipulations consistent with the Plan Amendments, including seasonal restrictions in the construction of the tank and other requirements to minimize disturbances. (Dkt. no. 57 at 6.) With respect to construction activities, the ROW Amendment prohibits construction from November 1 to

---

*(…fn. cont.)*
(Dkt. no. 50-6 at 4.) It is not clear whether the District staff's assumption about the two week processing time was based on this email.

[3]The declaration fails to explain whether construction during the winter months would conflict with one of the general stipulations in the ROW that "[n]o construction or routine maintenance activities shall be performed during periods when the soil is too wet to adequately support construction equipment." (Dkt. no. 50-2 at 5 (General Stipulation No. 3.).)

February 28 due to GRSG winter habitat, March 1 to May 15 for breeding habitat, and April 1 to June 30 for nesting habitat. (Dk. no. 57-1 at 45; dkt. no. 57-6 at 12.) Accordingly, construction would essentially be limited to a four month period from July 1 through October 31. (*Id.*)

## III. LEGAL STANDARD

"'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of hardships favors the plaintiff; and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20. Alternatively, in the Ninth Circuit, an injunction may issue under a "sliding scale" approach if there are serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The plaintiff, however, must still show a likelihood of irreparable injury and that an injunction is in the public interest. *Id.* at 1135. "[S]erious questions are those 'which cannot be resolved one way or the other at the hearing on the injunction.'" *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 926-27 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Marcos*, 862 F.2d at 1362 (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

## IV. DISCUSSION

Because BLM has approved the District's Application, Plaintiffs' argument of harm has morphed from harm caused by anticipated delay in BLM's approval to potential harm caused by the terms of BLM's approval. Plaintiffs contend that the terms of the ROW Amendment required as a result of BLM's adoption of the Plan Amendments "impose

several months of delay and only give Baker four months to complete a 12-month project to do the necessary site preparation, tank construction, and demolition of the old tank." (Dkt. no. 58 at 1.) Plaintiffs further contend that while "it may be possible to construct the tank in four months, the ROW seasonal constraints make completing the necessary pre- and post-construction site work during the July – October window when site work is allowed virtually impossible." (*Id.*) BLM counters that its handling of the District's Application for the Project does not support Plaintiffs' requested preliminary injunctive relief because it has approved the Project and Plaintiffs cannot show that the approved construction schedule would have been any different absent the Plan Amendments. (Dkt. no. 57.)

Plaintiffs have failed to demonstrate the likelihood of irreparable harm absent preliminary injunctive relief. The District's Application proposed that construction would start in April 2016 and would complete in July 2016, which is approximately a four month period of time. (Dkt. no. 57-2 at 5.) This coincides with the time frame permitted for construction under the ROW Amendment. (Dkt. no. 57-1 at 45; dkt. no. 57-6 at 12.) The entire four-phase process proposed in the Application, including planning and construction, would require about 10 months, from September 2015 to July 2016, not the "12-month project" cited in Plaintiffs' reply brief. (Dkt. no. 57-2 at 5.) Even accepting the District's contention that the preparatory activities required for construction were scheduled to commence in October 2015 (dkt. no. 58-3 at 3), Plaintiffs have not demonstrated why such preparatory work could not occur before construction under the terms of the ROW Amendment. Based on the information identified in the Application, the preparatory work consists of "Planning, Design & Specification" and "Bidding & Award of Contract." (Dkt. no. 57-2 at 5.) These activities involve no ground disturbances and would not be affected by the terms of the ROW Amendment. At best, Plaintiffs have shown that the District would now be required to work under a more condensed schedule that may pose some practical constraints and the four months of actual construction (April to July 2016 as proposed in the Application) would have to be shifted

5

about three months, from April 2016 to July 1, 2016; however, they have failed to demonstrate that the District would not be able to complete the Project under the terms of the ROW Amendment, or that complying with the ROW Amendment would cause immediate irreparable harm.

Moreover, Plaintiffs' arguments also ignore regulatory restrictions that existed before adoption of the Plan Amendments. Plaintiffs appear to assume that but for the Plan Amendments, the Application would have been approved without any stipulations. However, as BLM pointed out, the approved construction schedule is virtually the same as the schedule that would likely apply because of protections that existed pre-Plan Amendments. (Dkt. no. 57.) The Ely RMP provides for seasonal restrictions to protect the GRSG habitat where appropriate, including restricting activities within 2 miles of an active lek from March 1 through May 15, and within GRSG winter range from November 1 through March 31. (Dkt. no. 57-1 at 7; dkt. no. 57-9 at 3.) Thus, absent the Plan Amendments, construction would likely not have been approved to start in April, but on May 16 at the earliest, which is about six weeks from the July 1 approval date under the ROW Amendment. Moreover, the terms of the existing ROW already restrict construction or routine maintenance during periods when the soil is wet. (Dkt. no. 50-2 at 5.) It is not clear how the District would be able to engage in even the preparatory work starting in October (dkt. no. 58-3 at 3), or "during the 2015-2016 winter" (dkt. no. 50-1 at 3.), given that such ground disturbance work depends on the soil condition. Finally, Plaintiffs represent that the District is considering whether to "accept or appeal the ROW amendment."[4] (Dkt. no. 58 at 3.) The fact that the District may appeal the ROW amendment further underscores that the claimed harm is neither immediate nor imminent sufficient to warrant preliminary injunctive relief.[5] *See Caribbean Marine Servs.*

---

[4]The District has 30 days from receipt of BLM's decision approving the Application to appeal. (Dkt. no. 57-6 at 1.)

[5]Plaintiffs reiterated their broad argument as to harm caused by the adoption of the Plan Amendments. For example, Plaintiffs argue that the Project "begs the question" about how the next public health problem may be addressed. (Dkt. no. 58 at 4.) However, preliminary injunctive relief cannot be premised on speculation of potential
*(fn. cont...)*

*Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (A plaintiff seeking preliminary injunctive relief must "do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury.").

In sum, the Court finds that Plaintiffs have not demonstrated that irreparable harm is likely absent preliminary injunctive relief. The Court declines to preliminarily enjoin the Plan Amendments' restrictions on rights-of-way with respect to the Project.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

Plaintiffs cannot demonstrate the likelihood of irreparable harm in the absence of preliminary injunctive relief. It is therefore ordered that Plaintiffs' Motion for Preliminary Injunction (dkt. no. 4) with respect to the Baker Water and Sewer General Improvement District's water tank replacement project is denied.

DATED THIS 5th day of January 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

*(…fn. cont.)*
future problem because such alleged future problem is hardly immediate. *See Caribbean Marine Servs.*, 844 F.2d at 674.

7