UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WESTERN EXPLORATION LLC, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>U.S. DEPARTMENT OF THE INTERIOR, et al.,<br><br>　　　　　　　　　　Defendants. | Case No. 3:15-cv-00491-MMD-VPC<br><br>ORDER<br><br>(Motion to Intervene – dkt. no. 31.) |

**I.　SUMMARY**

This action seeks to challenge two federal agencies' decisions to amend their resource management plans to provide greater protection to the greater sage-grouse species and its habitat. Three nonprofit conservation organizations, The Wilderness Society ("TWS"), National Wildlife Federation ("NWF") and Earthworks (collectively, "Conservation Groups") move for intervention as of right, or in the alternative, for permissive intervention. (Dkt. no. 31.) For the reasons discussed herein, Conservation Groups will be permitted to intervene.

**II.　BACKGROUND**

　　**A.　Relevant Factual Background**

In March 2010, the U.S. Fish and Wildlife Service ("FWS") issued a finding on petitions to list three entities of the greater sage-grouse as threatened or endangered under the Endangered Species Act. 75 Fed. Reg. 13910 (Mar. 23, 2010). FWS found in part that "listing the greater sage-grouse (rangewide) is warranted, but precluded by

higher priority listing actions." *Id.* at 13910. FWS further examined whether existing regulatory mechanisms available to federal agencies, such as the Bureau of Land Management ("BLM") and the U.S. Forest Service ("USFS"), adequately protect sage-grouse species and their habitat and found them to be mainly inadequate. *See id.* at 13979-80, 13982. In response, BLM and USFS (collectively, "Agencies") began the process of planning for incorporation of sage-grouse protection measures into their land management plans. (Dkt. no. 22 at 12-14.) Ultimately, on September 16 and 21, 2015, the Agencies issued records of decision approving their respective management plan amendments (AR 5509, 5664), which govern 67 million acres of federal lands across ten western states. (AR 5446.) Plaintiffs challenge Defendants' decisions to adopt the portions of the plan amendments that cover over 20 million acres of federal lands in Nevada ("Plan Amendments").

The Plan Amendments guide land management decisions in greater sage-grouse ("GRSG") habitat throughout Nevada. (*See* AR 4778 (explaining that BLM's Plan Amendments "identify and incorporate appropriate measures in existing land use plans" in order to "conserve, enhance, and restore GRSG habitat").) The BLM Amendments recommend withdrawing lands within the SFA from the Mining Act of 1872. Based on that recommendation, on September 24, 2015, the Department of the Interior issued a notice of approval of an application to withdraw the SFA ("Proposed Withdrawal"), which "temporarily segregates the lands for up to 2 years while the application is processed." 80 Fed. Reg. 57635 (Sept. 24, 2015), *amended by* 80 Fed. Reg. 63583 (Oct. 20, 2015). The Proposed Withdrawal occurred after BLM had filed an application requesting it. 80 Fed. Reg. at 57636.

**B.    Relevant Procedural Background**

On September 23, 2015, Plaintiffs Elko County, Eureka County, Western Exploration LLC, and Quantum Minerals LLC filed their Complaint, seeking judicial review of the Agencies' actions under the Administrative Procedure Act, 5 U.S.C. § 706.

///

2

(Dkt. no. 1.) On October 22, 2015, Plaintiffs filed an Amended Complaint adding ten additional plaintiffs. (Dkt. no. 20.)

On November 11, 2015, Conservation Groups filed their motion to intervene. (Dkt. no. 31.) Plaintiffs have opposed (dkt. no. 51) and Conservation Groups have replied.[1] (Dkt. no. 53.) Defendants have not opposed intervention.

**III.   DISCUSSION**

Conservation Groups seek intervention as of right under Fed. R. Civ. P. 24(a), or in the alternative, as permissive under Fed. R. Civ. P. 24(b). The Court finds that Conservation Groups have demonstrated entitlement to intervene as of right.

Rule 24(a)(2) permits anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." When evaluating motions to intervene as a matter of right, courts construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical distinctions. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). A party seeking to intervene by right must meet four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). An applicant for intervention bears the burden of showing that all four requirements are met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Conservation Groups have satisfied these four factors.

///

---

[1] Not all named Plaintiffs are identified in the opposition so presumably some Plaintiffs do not oppose intervention. (Dkt. no. 51.)

### 1.     Factor 1: Timeliness

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997) (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir.1990)). Conservation Groups moved to intervene less than two months before Plaintiffs initiated this action and less than a month after Plaintiffs filed their Amended Complaint. There is no question that they have timely moved to intervene.

### 2.     Factors 2 and 3: Significant Protectable Interest and Impairment of That Interest

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "The 'interest' test is not a bright-line rule." *Alisal*, 370 F.3d 915, 919 (2004) (citations omitted).

"A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1397 (9th Cir. 1995). In fact, as the Ninth Circuit has recognized, public interest groups are generally permitted to intervene where they have been "directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837-38 (9th Cir. 1996). For example, in *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir.1983), *aff'd,* 790 F.2d 760 (9th Cir.1986), the court determined that Audubon Society's interest in the protection of wildlife and its active participation in the proceedings to establish a wildlife sanctuary entitled it to intervene as of right in a case challenging the validity of that sanctuary. In *Idaho Farm Bureau Fed'n,* 58 F.3d 1392, 1397 (9th Cir. 1995), the court found that conservation groups who were involved in

///

1 2 getting the Springs Snail listed under the Endangered Species Act were entitled to intervene as a matter of right in the litigation challenging the listing.

3 4 5 6 7 8 9 10 11 12 13 14 TWS and NWF have demonstrated that they actively participated in the process that led to adoption of the Plan Amendments. Both have demonstrated an interest in the management of federal lands covered in the Plan Amendments. (Dkt. no. 31-1 at 2-3; dkt. no. 31-2 at 4-6.) TWS submitted scoping comments, commented on the drafting of the plans and offered comments and administrative protests in 2015. (Dkt. no. 31-1 at 3.) According to NWF, it participated in the Plan Amendments process by providing "extensive comments to BLM and USFS in support of science-based strategies to conserve sustainable greater sage-grouse populations," and the Plan Amendments incorporated conservation measures that NWF and its members supported. (Dkt. no. 31-2 at 4-5.) Because Plaintiffs challenge adoption of the Plan Amendments, a decision in favor of Plaintiffs would impair TWS and NWF's ability to protect their interests. They have therefore satisfied the second and third factors.

15 16 17 18 19 20 21 22 23 24 25 While Earthworks did not participate in the administrative process that led to the adoption of the Plan Amendments, Earthworks nonetheless has demonstrated a significant protectable interest that could be impaired. Earthworks' mission is to protect "communities and the environment from the adverse impacts of mineral and energy development while promoting sustainable solutions." (Dkt. no. 31-3 at 3.) Its members use and enjoy lands covered by the Plan Amendments. (*Id.* at 3.) Earthwork plans to actively participate in the administrative Proposed Withdrawal process by submitting comments "to ensure that the final decision from the Interior Department protects the Greater Sage Grouse and its habitat to the maximum extent allowed by federal law." (*Id.* at 3-4.) This action does not directly challenge the Proposed Withdrawal, but the disposition of this case could potentially affect that process.[2] Because the Court must

---

[2] In seeking preliminary injunctive relief, Plaintiffs took the position that that the Proposed Withdrawal would not have occurred but for the Plan Amendments (Dkt. no. 55 at 404; *see* dkt. no. 32 at 12 ("[T]he notice of proposed withdrawal is a logical outgrowth of [the Plan Amendments].").)

5

construe Rule 24 liberally in favor of potential intervenors, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 817, the Court finds that Earthworks has satisfied the second and third factors.

### 3. Factor 4: Adequate Representation

Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086. Moreover, "the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate and that the burden of making this showing is minimal." *Sagebrush Rebellion,* 713 F.2d at 528.

Plaintiffs do not dispute that Conservation Groups have satisfied this requirement. The Court agrees with Conservation Groups that because of their more narrowed focus environmental protections in contrast to the agencies' broader land management interests, Defendants may not adequately represent their interests.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Conservation Groups' motion to intervene.

It is therefore ordered that Conservation Groups' motion to intervene (dkt. no. 31) is granted.

DATED THIS 28th day of January 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE